# United States District Court

<u>NORTHERN</u> DISTRICT OF TEXAS

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

AUG 12 2013

CLERK, U.S. DISTRICT COURT
By _____
Deputy

UNITED STATES OF AMERICA

V.

SANDY JENKINS

**COMPLAINT**

CASE NUMBER: 3-13-MJ-503·BH

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. Between 2005 and 2013, on or about, in the Northern District of Texas, defendant, **SANDY JENKINS**, did devise and intend to devise, with the intent to defraud, a scheme or artifice to defraud his employer by embezzling funds for his own self-enrichment, and caused the use of the United States Postal Service in furtherance of his scheme, in violation of 18 U.S.C. § 1341 (Mail Fraud).

I further state that I am a Special Agent with the Federal Bureau of Investigation and that this complaint is based on the following facts:

See attached Affidavit of Special Agent Christine L. Edson (FBI), which is incorporated and made a part hereof by reference.

Continued on the attached sheet and made a part hereof:    <u>XX</u> Yes    No

Signature of Complainant
Christine L. Edson
Special Agent, Federal Bureau of Investigation

Sworn to before me and subscribed in my presence, on this 12th day of August, 2013, at Dallas, Texas.

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE
Name & Title of Judicial Officer

Signature of Judicial Officer

## AFFIDAVIT

I, Special Agent Christine L. Edson, after being duly sworn, depose and state as follows:

1.      I am a Special Agent with the Federal Bureau of Investigation, currently assigned to the Dallas Division, duly appointed and acting according to law.  I have been a Special Agent since July 2012, and I am responsible for conducting investigations of complex financial crimes, to include wire fraud, mail fraud, and securities fraud.  Prior to my appointment as a Special Agent, I was employed as a Forensic Accountant with the Federal Bureau of Investigation for approximately three years.  I have received training in such areas as financial analysis, financial investigative methods and applications, techniques for disguising and transmitting the proceeds of illegal activities, and asset forfeiture.  I have also received training regarding computers and digital evidence.

2.      This affidavit sets forth facts establishing probable cause that **SANDY JENKINS** ("Jenkins") has committed at least the following federal criminal offense: Mail Fraud, in violation of 18 U.S.C. § 1341.

3.      Since this affidavit is submitted only for the limited purpose of securing a criminal complaint, I have not set forth each and every fact known to me concerning this investigation.  I have included facts sufficient to establish probable cause for the complaint sought.

4.      Collin Street Bakery, Inc. ("CSB") is a family-owned-and-operated business with headquarters located in Corsicana, Navarro County, Texas, in the Northern District of Texas.  CSB was established in 1896 and has several retail locations in Texas, but is best known for its mail-order fruitcake business.  **Jenkins** was the Corporate Controller for CSB from approximately February 1998 to June 21, 2013.

**Page 1 of 8**

5.      Beginning in at least January 2005 and continuing through June 2013, **Jenkins**, Corporate Controller for CSB, devised a scheme to defraud his employer, CSB, by embezzling funds for his own self-enrichment, and caused the use of the USPS in furtherance of his scheme. **Jenkins** was responsible for preparing checks for invoices received at CSB. **Jenkins** prepared and printed checks with CSB President Robert McNutt's ("McNutt") electronic signature. The fraudulent scheme involved **Jenkins** accessing CSB's computerized accounting system, creating checks payable to his (**Jenkins'**) personal creditors from CSB's account at Community National Bank & Trust of Texas ("Community National"), then entering into CSB's computerized accounting system an indicator that those checks had been voided. Those checks made payable to his (**Jenkins'**) creditors were not actually voided; instead, those checks were mailed to his creditors for his (**Jenkins'**) personal benefit. To keep CSB's books in balance and to further disguise his fraudulent activity, **Jenkins** would again access CSB's computerized accounting system and create a check on CSB's computerized accounting system to an approved vendor for the same amount. **Jenkins** also wrote checks to his creditors for his personal benefit without attempting to disguise the recipient to the funds.

6.      On June 26, 2013, the FBI Dallas Division received a referral from the Corsicana Police Department ("CPD") of an allegation from CSB that their corporate controller, **Jenkins**, had embezzled funds through the manipulation of corporate records and fraudulent mailings. On July 2, 2013, I met with CSB executives at the FBI Dallas Division, who provided information about the alleged fraudulent activity conducted by **Jenkins** at CSB, including the results of CSB's internal investigation. CSB identified the fraudulent activity on June 20, 2013, and confronted and terminated **Jenkins** on June 21, 2013. CSB estimated that **Jenkins** embezzled over $16.5 million from CSB from January 2005 until his employment was terminated on June

21, 2013.

7.      On July 2, 2013, I interviewed CSB President Robert McNutt.  McNutt had been the President of CSB since 1999.  The McNutt family is the primary owner of CSB, although there are other shareholders.  On June 21, 2013, CSB Chief Operations Officer, Larry Jenkins (no relation to **Sandy Jenkins**), and CSB Vice President of Finance and Information Services, Scott Hollomon, had come into McNutt's office and told him that they had reason to believe that **Jenkins** was embezzling money from CSB.  Hollomon and Larry Jenkins told McNutt that CSB Accounting Clerk Semetric Williams had found evidence that certain checks were not "adding up" correctly.  Hollomon told McNutt that he and Williams had started looking into the issue with the checks and had found evidence of at least $250,000 embezzled by **Jenkins**.  Hollomon and Larry Jenkins wanted to confront **Jenkins** with the evidence, which consisted of voided checks.  McNutt instructed Hollomon and Larry Jenkins to arrange for an off-duty Sheriff's Deputy to be onsite at CSB when they confronted **Jenkins**.  Hollomon and Larry Jenkins confronted **Jenkins** on June 21, 2013.  Hollomon and Larry Jenkins collected **Jenkins'** work cell phone and keys.  **Jenkins** had left a master key to CSB at his house and McNutt had the Sheriff's Deputy retrieve the key from the house.  CSB's books were not audited and CSB's invoice process was not audited during **Jenkins'** employment.  **Jenkins** was not authorized to sign checks for CSB.  All checks were signed with McNutt's electronic signature.  McNutt never reviewed the signed checks after they were printed.  **Jenkins** had a computer in his office, from which he could view and print checks with McNutt's electronic signature.

8.      On July 12, 2013, I interviewed CSB Accounting Clerk Semetric Walker, who provided the following information.  Walker had been employed as an Accounting Clerk at CSB since December 2011.  Walker reported to **Jenkins** and Hollomon at CSB.  Walker explained the

**Page 3 of 8**

"electronic reconciliation" process that was used at CSB. CSB would receive bank statements from Community National Bank & Trust of Texas on a disk. **Jenkins** would put the disk into the computer and start the "electronic reconciliation" process. CSB's accounting program, Account Mate, would match up the electronic journal entries with the bank statements. The "electronic reconciliation" would "mark verified" the items that matched the electronic journal entries with the bank statements. Items that did not match up automatically would have to be reconciled manually. After reconciling each item manually, Walker would select "mark verified" in the accounting program for the respective item. **Jenkins** also had the ability to "mark verified" items prior to turning over the "electronic reconciliation" process to Walker. There was no way to tell the difference between the computer's "mark verified" notation, **Jenkins'** "mark verified" notation, or Walker's "mark verified" notation.

9.     On June 20, 2013, Walker was working on the "electronic reconciliation" process when she noticed that the system showed a $20,000 check, but that the statement showed a $10,000 check. Walker had access to view the Community National Bank & Trust of Texas statements online, including images of voided checks. Walker pulled up the image of the $10,000 check online and noticed that it was made payable to Capital One Bank. Walker knew that CSB did not have an account at Capital One Bank.

10.     Walker took the check register and the image of the check to **Jenkins**. **Jenkins** told Walker, "Let me look at it, and I'll give it back to you." Walker stated that **Jenkins** "looked like a ghost" and could tell right away that something was not right.

11.     Approximately thirty minutes later, **Jenkins** came back to Walker with an explanation. **Jenkins** told Walker that he had paid for postage through Capital One Bank. The $20,000 check listed on the "Voided Check Register" was made out to "Postmaster Corsicana."

**Jenkins** told her that the $20,000 was not going to clear, but that the $10,000 check to Capital One would clear. **Jenkins** then left and went to lunch.

12.     Walker was not satisfied with **Jenkins'** explanation. Walker ran a "Voided Check Register" report for all voided checks to "Postmaster Corsicana" form November 2012 to June 2013. Walker then went online and started entering the check numbers listed on the "Voided Check Register" report to pull up the images of the checks from the bank. In conducting this review of the "Voided Check Register" report and the actual check images for all voided checks to "Postmaster Corsicana" from November 2012 to June 2013, Walker identified sixteen checks that were actually made payable to entities other than "Postmaster Corsicana." The checks were made out to Capital One Bank, N.M., Inc. Bank of America, and American Express, and did not appear to be related to CSB business.

13.     Walker went into Hollomon's office and showed Hollomon the check register report and the actual check images from the bank. Hollomon went into the office of Larry Jenkins, and, after a short amount of time, Larry Jenkins called Walker into his office and she explained what she had found again to Hollomon and Larry Jenkins.

14.     The CSB provided the FBI Dallas Division with the complete "Voided Check Register" listing all the checks from January 2005 to June 2013 from that register that have been identified as fraudulent by CSB through its internal investigation. The total dollar amount of the fraudulent checks is approximately $16.65 million. The following table summarizes the total number and total dollar amount of the fraudulent checks by year:

| Year | Total Number of Fraudulent Checks | Total Dollar Amount |
|---|---|---|
| 2005 | 76 | $2,149,137.00 |
| 2006 | 139 | $2,286,182.98 |
| 2007 | 140 | $2,483,598.09 |

| 2008 | 127 | $2,220,483.05 |
| 2009 | 106 | $1,732,994.64 |
| 2010 | 97 | $1,615,790.49 |
| 2011 | 88 | $1,866,883.43 |
| 2012 | 81 | $1,749,328.75 |
| 2013* | 34 | $545,388.48 |
| **Grand Total** | **888** | **$16,649,786.91** |

*January 1, 2013 to June 21, 2013

15.    I analyzed the "Voided Check Register" listing all the checks from January 2005 to June 2013 from that register that have been identified as fraudulent by CSB through its internal investigation, and was able to subtotal the amounts paid to some of the most frequent payees, summarized in the following table:

| **Payee** | **Total Amount** |
|---|---|
| American Express | $11,120,449.92 |
| Citi Card | $1,941,596.39 |
| Neiman Marcus | $1,196,773.51 |
| Bank of America | $555,915.97 |
| Capital One | $337,957.66 |
| BAC H/L (Home Loan) Servicing | $125,854.30 |
| Lexus Financial Services | $101,303.27 |
| Sewell (Lexus) | $98,662.30 |

16.    The CSB provided the FBI Dallas Division with a copy of the Mail Log for all USPS Express Mail. The Mail Log was maintained by Karla Jo Brady. On July 16, 2013, I interviewed Karla Jo Brady, who provided the following information. Brady worked as an Accounts Payable Assistant at CSB. Brady had been at CSB for approximately fourteen years. Brady reported to **Jenkins**. Brady used the Mail Log for all USPS Express Mail and mail for which "Return Receipt" was requested. Brady developed the Mail Log herself for tracking

**Page 6 of 8**

purposes, and was the only person at CSB that used it. **Jenkins** always wanted mail shipped overnight. Brady used USPS Express Mail for all of **Jenkins'** mail going to Post Office (P.O.) boxes. CSB would receive a monthly bill for all USPS Express Mail service. Brady stated that **Jenkins** was the primary user of USPS Express Mail service and that the monthly bill to CSB averaged approximately $300. **Jenkins** gave Brady sealed envelopes to be mailed, or left sealed envelopes on Brady's desk to be mailed. Brady would complete the USPS Express Mail form for **Jenkins'** mail going to P.O. boxes. Brady would use a pre-printed return address label for CSB. Brady would add the name "Sandy Jenkins" below the return address. Brady would complete the form by adding the address for the recipient, provided by **Jenkins**. Brady would peel off the sticker for each tracking number from the USPS Express Mail form and attach it to the Mail Log. Brady would write the date and the recipient on the Mail Log and would make a note in the "Comments" column. Brady would typically write "SJ" in the "Comments" column for **Jenkins'** mail.

17.    The following ten checks have been identified as fraudulent by CSB through its internal investigation. CSB's "Voided Check Register" shows the checks that **Jenkins** actually mailed and cashed, but designated in CSB's computer system as having been voided. CSB also identified the checks that **Jenkins** entered into CSB's computer system solely for the purpose of covering the money sent to **Jenkins'** creditors. CSB provided this information to the FBI Dallas Division, along with the corresponding bank statement showing that the fraudulent check had been cashed and the image of the cashed check paid to **Jenkins'** creditors for his personal benefit. The USPS Express Mail service for each check to **Jenkins'** creditors was recorded on CSB's mail log, including the respective tracking number. The table below summarizes the ten checks representing embezzled funds by **Jenkins**:

| Voided Check # | Voided Check Date | Payee | Amount | USPS Express Mail tracking # |
|---|---|---|---|---|
| 147399 | 1/13/2011 | Bank of America | $20,000.00 | EM409444121US |
| 148038 | 3/1/2011 | Citi Cards | $19,737.98 | EM409443761US |
| 152893 | 2/1/2012 | Citi Cards | $16,636.44 | EM409441726US |
| 154022 | 5/2/2012 | BAC H/L Servicing, LP | $5,000.00 | EM409442032US |
| 155303 | 9/4/2012 | Citi Cards | $20,921.61 | EM409441071US |
| 156270 | 10/30/2012 | American Express | $31,649.35 | EM409441292US |
| 156938 | 12/3/2012 | Capital One | $19,001.50 | EM409441385US |
| 157446 | 12/17/2012 | Bank of America | $18,540.00 | EM409441505US |
| 158069 | 1/14/2013 | American Express | $33,216.74 | EM409441540US |
| 158464 | 2/7/2013 | Capital One Bank | $18,998.50 | EM409441575US |

18.     Based upon the foregoing facts and information, I submit there is probable cause to believe **SANDY JENKINS**, with the intent to defraud, did devise a scheme to defraud his employer, CSB, by embezzling funds for his own self-enrichment, and caused the use of the United States Postal Service in furtherance of his scheme, in violation of 18 U.S.C. § 1341 (Mail Fraud).

Respectfully submitted,

Christine L. Edson
Special Agent
Federal Bureau of Investigation

Sworn in my presence on August 12, 2013

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE
NORTHERN DISTRICT OF TEXAS

Page 8 of 8