IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | Case No. 3:13-CR-350-K |
| | § | |
| KAY JENKINS (02) | § | |

## FACTUAL RESUME

Kay Jenkins, and her attorneys Jody Rudman and Joe Kendall, and the United States of America agree that the following is true, correct, and can be used to support Jenkins's plea of guilty to Count Eleven of the Superseding Indictment:

## ELEMENTS OF THE OFFENSES

To prove the offense alleged in Count Eleven of the Superseding Indictment, charging a violation of 18 U.S.C. § 1956(h) [18 U.S.C. § 1957], that is, Conspiracy to Commit Money Laundering, the government must prove each of the following elements beyond a reasonable doubt:

*First.*      That the defendant and at least one other person (that is, codefendant Sandy Jenkins) made an agreement to commit the crime of engaging in monetary transactions with property derived from specified unlawful activity; and

*Second.*    That the defendant knew the unlawful purpose of the agreement and joined in it willfully, that is, with the intent to further the unlawful purpose.

The elements of the base offense, that is, Engaging in Monetary Transactions in Property Derived from Specified Unlawful Activity, a violation of 18 U.S.C. § 1957, requires proof of the following elements beyond a reasonable doubt:

**Factual Resume – Page 1 of 7**

*First.*      That the defendant engaged or attempted to engage in a monetary transaction;

*Second.*   That the defendant knew or was deliberately ignorant as to whether the transaction involved criminally derived property;

*Third.*     That the property had a value greater than $10,000;

*Fourth.*   That the property was derived from specified unlawful activity, that is, mail fraud; and

*Fifth.*     That the transaction occurred in the United States.

## STIPULATED FACTS

Kay Jenkins agrees that the government could readily prove at trial that starting at least as early as December 2004, and continuing until his termination on or about June 21, 2013, Sandy Jenkins engaged in a massive scheme and artifice to defraud his former employer, The Collin Street Bakery ("Bakery"), in order to financially benefit he and his wife, codefendant Kay Jenkins. Over the course of the scheme, Sandy Jenkins embezzled over $16 million from the Bakery, which was used to fund an extravagant lifestyle for his wife, defendant Kay Jenkins, and himself. Kay Jenkins did not participate in the embezzlement of funds from the Bakery. That crime was committed solely by Sandy Jenkins.

Kay Jenkins admits that beginning at least as early as December 2004, and continuing thereafter until at least August 2013, in the Dallas Division of the Northern District of Texas and elsewhere, she did knowingly and willfully combine, conspire, confederate, and agree with her husband, Sandy Jenkins, to commit the offense of engaging in monetary transactions with property derived from a criminal activity. Kay

**Factual Resume – Page 2 of 7**

Jenkins agrees that the government could readily prove at trial that the funds involved in these monetary transactions were derived from Sandy Jenkins' embezzlement of funds from the Bakery.

Sandy and Kay Jenkins were married in 1971. Starting in or about 1998, Sandy Jenkins began working at the Bakery with an annual salary of approximately $25,000. In or about 2000, Sandy Jenkins was promoted to controller, the position he remained in until his termination in June 2013. At no point during Sandy Jenkins's employment with the Bakery did his annual salary exceed approximately $50,000, as reflected on the Jenkins' joint tax returns. Starting in or about 2004, approximately the same time Sandy Jenkins began embezzling money from the Bakery, Kay Jenkins did not work outside the home. Kay Jenkins knew that the Jenkins' combined income was insufficient to pay for their extravagant lifestyle.

During this time, Sandy and Kay Jenkins maintained bank accounts (checking and/or savings) with at least the following institutions: Bank of America, N.A.; Century Bank, F.S.B.; JP Morgan Chase Bank, N.A.; Prosperity Bank; and Wells Fargo Bank, N.A. Further, Sandy and Kay Jenkins maintained credit card accounts with at least the following institutions: American Express Company; American Express Bank, F.S.B.; American Express Centurion Bank; Bank of America, N.A.; Capital One Bank; Capital One N.A.; Capital One Financial Corporation; Chase BankCard Services, Inc.; Citibank, N.A.; FIA Card Services, N.A.; First USA Management Services, Inc.; GE Capital Financial, Inc.; MBNA America Bank, N.A. d/b/a MBNA America; The Neiman-Marcus Group, L.L.C., f/k/a The Neiman-Marcus Group, Inc.

**Factual Resume – Page 3 of 7**

In furtherance of the conspiracy, Sandy and Kay Jenkins primarily spent the embezzled funds by making charges on an American Express Centurion credit card (i.e., a "black" American Express card which charges a $2,500 per year service fee but has no limit). Both Sandy Jenkins and Kay Jenkins had an American Express Centurion credit card and both Sandy Jenkins and Kay Jenkins made charges on those credit cards that were subsequently paid off with embezzled funds from the Bakery. Between 2005 and 2013, Sandy Jenkins and Kay Jenkins incurred charges totaling approximately $11,120,449.92 with American Express.

Among other things, the charges included approximately $3.3 million in payments for approximately 223 trips on private jets contracted through North Dallas Aviation to various locations, including Santa Fe, New Mexico; Napa, California; and Aspen, Colorado. Kay Jenkins further admits that on nearly all of the 223 trips on private jets, she traveled with Sandy Jenkins. As representative samples of the charges on the credit card to pay for the private-jet travel, Sandy Jenkins and Kay Jenkins engaged in the following monetary transactions:

- On or about May 21, 2009, Sandy Jenkins and Kay Jenkins, aided and abetted by each other, engaged in a monetary transaction in the amount of $10,845.60 to pay for Kay Jenkins to travel on a private jet from Corsicana, Texas, to Aspen, Colorado.

- On or about July 11, 2011, Sandy Jenkins and Kay Jenkins, aided and abetted by each other, engaged in a monetary transaction in the amount of $24,051.38 to pay for Sandy Jenkins and Kay Jenkins to travel on a private jet from Corsicana, Texas, to Santa Fe, New Mexico.

- On or about June 28, 2012, Sandy Jenkins and Kay Jenkins, aided and abetted by each other, engaged in a monetary transaction in the amount of $29,980.68 to pay for Kay Jenkins to travel on a private jet from Corsicana,

**Factual Resume – Page 4 of 7**

Texas, to Ashland, Wisconsin.

- On or about September 21, 2012, Sandy Jenkins and Kay Jenkins, aided and abetted by each other, engaged in a monetary transaction in the amount of $36,664.80 to pay for Sandy Jenkins and Kay Jenkins to travel on a private jet from Corsicana, Texas, to Napa, California.

Kay Jenkins further admits that her husband paid for the American Express bill at the end of each payment period using funds derived from the embezzlement of money from the Bakery.

Sandy and Kay Jenkins also spent the embezzled funds by making charges on other credit cards, including Citibank credit cards and a Neiman Marcus credit card. Between 2005 and 2013, Sandy Jenkins and Kay Jenkins incurred charges totaling approximately $1,941,596.39 on Citibank credit cards and charges totaling approximately $1,196,773.51 on a Neiman Marcus credit card.

Kay Jenkins further admits that she and Sandy Jenkins purchased significant amounts of watches, jewelry, and other precious items from various vendors, including but not limited to deBoulle Diamond & Jewelry (in Dallas, Texas); Eiseman Jewels (in Dallas, Texas); Hotchfield Jeweler (in Aspen, Colorado), Bachendorf's (in Dallas, Texas), and Neiman Marcus (in Dallas, Texas). On many occasions, Sandy Jenkins and Kay Jenkins shopped together at these and other locations in which both men's and women's jewelry and watches were purchased, often using the American Express Centurion card, which was later paid off with funds embezzled from the Bakery. As particular examples only, Kay Jenkins admits that the following transactions each involved money embezzled from the Bakery:

**Factual Resume – Page 5 of 7**

- On or about December 20, 2006, Sandy and Kay Jenkins, aided and abetted by each other, purchased five Rolex watches for $52,765.75 at Eiseman Jewels in Dallas, Texas, the invoice bearing the name Kay Jenkins;

- On or about February 12, 2007, Sandy and Kay Jenkins, aided and abetted by each other, purchased a Ulysse Nardin watch for $22,359.05 from Eiseman Jewels in Dallas, Texas, the invoice bearing the name Kay Jenkins;

- On or about February 15, 2007, Sandy and Kay Jenkins, aided and abetted by each other, purchased a Gents Rolex watch for $19,592.50 from Eiseman Jewels in Dallas, Texas, the invoice bearing the name Kay Jenkins;

- On or about December 24, 2007, Sandy and Kay Jenkins, aided and abetted by each other, purchased a Ladies Rolex watch for $41,000.00 from Eiseman Jewels in Dallas, Texas, the invoice bearing the name Kay Jenkins;

- On or about December 28, 2007, Sandy and Kay Jenkins, aided and abetted by each other, purchased women's ruby and diamond earrings for $95,260.00 from Eiseman Jewels in Dallas, Texas, the invoice bearing the name Kay Jenkins.

Kay Jenkins further admits that she and Sandy Jenkins were invited into private rooms to view jewelry at deBoulle Diamond and Jewelry, Neiman Marcus, and Bachendorf's in Dallas, Texas.

Although Sandy Jenkins never specifically discussed with Kay Jenkins that he was embezzling funds from the Bakery, Kay Jenkins admits that she deliberately closed her eyes to what would otherwise have been obvious to her. In particular, Kay Jenkins was well aware of the legitimate income earned by Sandy Jenkins at the Bakery (roughly $50,000 per year, which was disclosed on their joint tax returns) as well as the exorbitant amount of items and money spent by Sandy Jenkins and Kay Jenkins on luxury items, as discussed herein. Moreover, Kay Jenkins admits that she knew Sandy Jenkins provided

different explanations to different people when attempting to explain the source of funds for their lifestyle.  Kay Jenkins knew at least some of those explanations were false.

The above facts are true and correct.


_____    _May 15, 2015_____
J. NICHOLAS BUNCH                Date
Assistant United States Attorney


_____    _5-17-15_____
KAY JENKINS                     Date
Defendant


_____    _5-17-15_____
JODY RUDMAN                     Date
Attorney for Defendant


_____    _5-17-15_____
JOE KENDALL                     Date
Attorney for Defendant


**Factual Resume – Page 7 of 7**